PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

(Circuit Court, S. D. New York. September 23, 1911.)

1. STREET RAILROADS (§ 49*)—CAR LICENSE FEES—LIABILITY OF LESSEE.

Under the law of New York, the liability of a street railway company for license fees for cars operated over franchise routes which it has leased from companies which derived the franchises either by direct grant from the state or locality, or mediately by consolidation with a company so deriving them, exists if the burden was originally imposed by the charter of the lessor or constituent company, but subsists only against the operating company, and is created by operation of law, and not as the result of express agreement between lessor and lessee or constituent company and successor.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

2. STREET RAILROADS (§ 49*)—CAR LICENSE FEES—LIABILITY OF LESSEE—CONSTRUCTION OF LEASE.

A lease of street railroads, including lines held under leases by the lessor, containing provisions that the lessee should pay all taxes and assessments which might be imposed on the property during the term, and by which the lessee assumed all obligations of the lessor under all leases and contracts, but directing the apportionment of the rentals "and other payments" between the periods preceding and succeeding the taking of possession under the lease, construed, and such provisions *held* to operate prospectively only, and not to render the lessee liable for car license fees which accrued prior to its taking possession, even though the lessor was obligated by its own leases to pay the same.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

3. LIMITATION OF ACTIONS (§ 58*)—ACCRUAL OF RIGHT OF ACTION—COLLECTION OF CAR LICENSE FEES.

Under an ordinance requiring the payment of an annual license fee for each street car run within the city, the right of action of the city to collect the license fees did not accrue, for the purpose of the statute of limitations, until the end of the calendar year for which the fees were payable.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 58.*]

4. STREET RAILROADS (§ 69*)—REGULATION—CAR LICENSE FEES.

The payment of franchise tax for a stated year by a street railroad company cannot be presumed to include car license fees for such year, under Tax Law N. Y. (Consol. Laws 1909, c. 60) § 48, which permits a deduction of such fees when actually paid.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 69.*]

5. TAXATION (§ 153*)—STREET RAILROADS—TAX ON GROSS RECEIPTS—CONSTRUCTION OF NEW YORK STATUTE.

The provisions of General Railroad Law N. Y. (Laws 1890, c. 565) § 95, as amended by Laws 1892, c. 676, imposing a tax on the gross receipts of every corporation building or operating a railroad or branch or extension thereof under the provisions of sections 90–110, or of Laws 1884, c. 252, within a city of 1,200,000 or more inhabitants, to be paid to such city, but providing that, if any street surface railroad corporation existing and operating any such railroad in 1884 shall have thereafter extended its lines and shall operate the extensions, it shall pay such tax only on such portion of its gross receipts as the length of the extension shall bear to the entire length of its lines, is limited to lines built since 1884, and does not apply to lines previously constructed, because they have passed into the control of, and are operated by, new corporations organized under the act of 1890, as lessees or otherwise.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 153.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6.** STREET RAILROADS (§ 49\*)—PAVING—LIABILITY OF LESSEE—NEW YORK STATUTE.

General Railroad Law N. Y. (Laws 1892, c. 676) § 98, requiring every street surface railroad company, so long as it shall continue to use any of its tracks in any street, to pave and keep in repair the pavement between and alongside of its tracks, applies to a company operating tracks as lessee.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.\*]

**7.** STREET RAILROADS (§ 37\*)—PAVING—OWNERSHIP OF MATERIAL USED.

Where a street railroad company has laid pavement between its tracks as required by statute, the material used ceases to belong to the company and becomes part of the street, and the city cannot be required to pay for it on its removal to be replaced by a different pavement.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 37.\*]

**8.** STREET RAILROADS (§ 37\*)—PAVING—SUFFICIENCY OF NOTICE.

Under General Railroad Law N. Y. (Laws 1892, c. 676) § 98, requiring street railroad companies to pave between and alongside of their tracks, and providing that, if they fail to do so on notice by the city, the latter may do the work and recover the cost from the company, where such a notice is of such a nature as to reasonably apprise the company of the character and extent of the work required, it is sufficient, and informalities are to be disregarded. A notice served on a lessee, requiring repavement of a portion of a street, designated, on which the lessee operated tracks, is sufficient, although its designation of the company owning such tracks is erroneous, or it erroneously states the area to be paved; but a notice merely stating that the company has failed to comply with a prior notice, and that the city will have the work done, is insufficient to support an action for the cost, where the prior notice referred to was not served.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 37.\*]

**9.** STREET RAILROADS (§ 37\*)—PAVING—CONSTRUCTION OF STATUTE—"USE."

General Railroad Law N. Y. (Laws 1892, c. 676) § 98, requiring a street railroad company, "so long as it shall continue to 'use' any of its tracks in any street," to pave between such tracks, etc., applies to tracks maintained by a company under claim of right, although not actually used by it, or used only to a small extent.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 37.\*

For other definitions, see Words and Phrases, vol. 8, pp. 7228–7237, 7825.]

In Equity. Suit by the Pennsylvania Steel Company and others against the New York City Railway Company and others. On exceptions to special master's report as to claims of city of New York for car license fees, for percentages, and for paving in and about tracks. Exceptions overruled, and report confirmed.

The following is the report of William L. Turner, Special Master:

The claims above alluded to are of three kinds viz., for car license fees, for percentages of the gross receipts, and for paving in and about tracks owned or leased by the street railway companies named. These claims will be considered in the order indicated.

### First—The Car License Fees.

As originally filed with me, the claims for these fees against the Metropolitan Company were for cars operated by it during the years 1900 and 1901, and they aggregated, without interest, to the date of the appointment of the receivers, $78,700. The claims against the New York City Railway Company included these same fees, on the theory that their payment had been

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assumed by the latter company, and additional fees for cars operated by it from 1902 to 1906, inclusive, amounting to $206,639.37, making the total claim against it $285,339.37. On hearings had, these claims were reduced by the withdrawal of claims for cars operated on roads other than those owned by the Sixth, Eighth, Ninth, and Third Avenue Companies, so that those now insisted on by counsel for the city in his brief filed, stand as follows:

| | | | | |
|---|---|---|---|---|
| Third Avenue Company | | | | $ 42,660 00 |
| Sixth | " | " | | 57,621 32 |
| Eighth | " | " | | 59,794 71 |
| Ninth | " | " | | 10,685 54 |
| A total of | | | | $170,761 57 |

Of this total, the amount now claimed against the Metropolitan, for which it is insisted it is the primary debtor, is $41,200, made up as follows:

| | | | | |
|---|---|---|---|---|
| Third Avenue Company | | | | $11,200 00 |
| Sixth | " | " | | 15,000 00 |
| Eighth | " | " | | 15,000 00 |

The balance, $129,461.57, is the amount for which the City Company is claimed to be primarily liable, and on the items going to make up these totals interest is claimed from the date that they accrued at the end of each calendar year to September 24, 1907, the date of the appointment of the receivers of the property of these two companies.

[1] The law with reference to the liability of a street railway company for license fees for cars operated over franchise routes which it has leased from companies which derived the franchises, either by direct grant from the state and locality, or mediately by consolidation with a company so deriving them, is not only that such liability exists if the burden was originally imposed by the charter of the lessor or constituent company, but also that it subsists only against the company operating as lessee, or successor, and that it is created by operation of law, and not as the result of express agreement between lessor and lessee, or constituent company and successor. Mayor v. Twenty-Third St. Company, 113 N. Y. 311, 21 N. E. 60; City of New York v. Third Avenue R. Co., 77 App. Div. 379, 79 N. Y. Supp. 431. This makes it unnecessary to consider any contention urged by counsel for contract or tort creditors, either as to the validity of the lease between the New York City Railway and the Metropolitan Companies, or as to the legal effect of covenants which such lease may contain as to the payment of such charges, for it is a conceded fact that both companies did operate the cars for which the claims are made during the periods stated.

[2] I do not think, however, that any liability on the part of the New York City Railway Company as to the claim against the Metropolitan resulted from any of the assumption clauses contained in the Metropolitan lease to it of 1902, as urged by the city's counsel. Assuming, for the purpose only of sustaining this conclusion, that the assumption clauses in the lease may be regarded as evidencing a contract for the benefit of the city, upon which the city might claim for charges accruing during the term created by the lease, it seems clear that the language of such clauses is prospective only, and does not contemplate the assumption of license fees for cars run during the years 1900 and 1901, prior to the making of the lease. The precise language relied upon which is contained in the lease is to be found in paragraphs 2 and 3 of that document, and possibly in paragraph 13. In paragraph 2, the City Railway Company agrees to discharge all taxes and assessments, or other charges, "which during the term hereby granted may be imposed upon the property hereby demised, or any part thereof," while by paragraph 3 the lessee agrees to pay from time to time "all rentals and other sums of money which are, or may be, or become due or payable, by reason of any leases and other contracts to which the lessor is a party, and the lessee hereby assumes all obligations of the lessor under all such leases and contracts." The concluding portion of this paragraph, however, directs the apportionment of the rentals "and other payments" referred to between the periods respectively

preceding and succeeding the dates of taking possession under the lease, so that, if there were any clauses of assumption in the leases of the Third, Sixth, Eighth, and Ninth Avenue roads to the City Railway Company's lessor broad enough to embrace car license fees and any payments due under such clauses at the time of the making of this lease in 1902, and the taking of possession thereunder, which was April 1st of that year, those accruing during the period preceding such taking of possession were by this language to be apportioned to the Metropolitan Street Railway Company. Language similar to that quoted is contained in the lease of the Third Avenue Company to the Metropolitan Street Railway Company, and has been construed by the courts as prospective, and not as relating to car license fees accruing prior to its execution. City v. Third Ave. R. R. Co., 77 App. Div. 379, 79 N. Y. Supp. 131. Other language pointed to in paragraph 13 of the lease of 1902, requiring the payment of rentals, taxes, and "other unliquidated claims" from a fund of $23,000,000. refers to a fund that by paragraph 12 the lessee was required to pay to the lessor for the purpose, among others, indicated, and that payment, as was conceded on the hearings, it made, so that if, under this lease, the city were entitled to proceed against this fund, it could proceed only against the Metropolitan Company.

[3] Counsel for the receivers of the Metropolitan Street Railway Company contends, with reference to the license fees claimed against that company for the year 1900, that they are barred by the statute of limitations. Actions were begun for cars operated over the lines of the Sixth Avenue Railroad Company, the Eighth Avenue Railroad Company, and the Third Avenue Railroad Company for the license fees for the year in question on the 26th day of November, 1906, which is more than 6 years from January 1, 1900, on which it is urged that the cause of action for the fees for the cars run during that year accrued. This contention could not in any event be sustained as to the fees for cars run over the Third Avenue road, since it has been judicially settled that as to that road the 20-year statute applied (City of New York v. Third Avenue R. Co., 42 Misc. Rep. 599, 87 N. Y. Supp. 584); and I am of the opinion that the claims against neither the Sixth nor the Eighth Avenue roads are barred, because, assuming that the 6-year statute does apply, as it probably does (Mayor v. Broadway Road, 17 Hun [N. Y.] 245), I do not think that it can be said that the cause of action accrued on the first day of the year during which cars were run. The language of the existing Code of Ordinances, quoted by counsel as creating and defining the obligation, is "that each and every passenger car run in the borough of Manhattan shall pay into the city treasury the sum of $50 annually for a license." Construing this most favorably to the contention, it cannot be said that as to any car operated during the year, for which a claim is made, a cause of action arose earlier than the first day of operation in the year, but as to this there is no proof; the burden of establishing such date being, I assume, upon those resisting the claim. Six years prior to the commencement of actions includes more than one month of the year 1900 for which the claim is made, and non constat that all of the cars claimed for did begin to run during that month. I think, however, that a reasonable construction of the language quoted would be that the right accrues to the city at the end of each calendar year, instead of at the beginning. There is certainly as much justification from the language used for such construction as for the one contended for, and I am referred to no decision to the contrary.

[4] It is now conceded that payment of the franchise tax has been made for all the years for which these car license fees are claimed, and it is urged on behalf of the New York City Railway Company that payment of the claims in controversy here should be assumed to have been included in the franchise taxes thus paid, since section 48 of the tax law (Consol. Laws 1909, c. 60) permits a deduction of such payments. That section, however, contemplates a deduction only of payments actually made, and, as the payments in controversy never have been made, it is difficult to see how they can be presumed to have been deducted.

Counsel for the city had not, as I had supposed, withdrawn on the record his claim for a preference for these car license fees; but as to that it is sufficient to say that this court has in the case of the Central Trust Company v.

Third Avenue Railroad Company determined that the car license fees are not entitled to a preference, in which determination it followed the decision of the state courts to the same effect. Wise v. Wise Co., 153 N. Y. 507, 47 N. E. 788.

The claim of the city against the Metropolitan road will therefore be liquidated at $41,300, and that against the New York City Railway Company at $129,381.57. Interest on these amounts, down to the date of the appointment of the receivers, will also be allowed; the amount claimed by the city on the fees due from the Metropolitan road being $18.301, and the amount claimed on the fees due from the New York City Railway Company being $9,755, making a total claim against the Metropolitan road, as allowed, $59,-961, and against the New York City, $139,136.57. Differences, if any, as to these amounts of interest may be suggested, and will be adjusted before reporting them to the court.

### Second—Percentage of the Gross Receipts.

[5] The percentage of gross receipts claimed by the city against the Metropolitan Company is for the years 1899 to 1902, both inclusive; those for the year 1902 being apportioned between that company and its lessee, the New York City Railway Company, for the reason that the lease went into effect in April of that year. The amount of the claim is $1,235.973.82. The claim against the New York City Railway is for the years 1902 to 1907, both inclusive, and its amount is $3,408,126.66, making the total of the claims against both companies $4,644,100.48.

These claims are made under article 4, § 95, of the general railroad law, which is as follows: "Every corporation building or operating a railroad or branch or extension thereof, under the provisions of this article, or of chapter 252 of the Laws of 1884, within any city of the state having a population of 1,200,000 or more, shall, for and during the first five years after the commencement of the operation of any portion of its railroad annually, on November 1st, pay into the treasury of the city in which its road is located to the credit of the sinking fund thereof, three per cent. of its gross receipts for and during the year ending September 13th next preceding; and after the expiration of such five years, make a like annual payment into the treasury of the city to the credit of the same fund, of five per cent. of its gross receipts. If a street surface railroad corporation existing and operating any such railroad in any such city on May 6, 1884, shall have thereafter extended its tracks or constructed branches therefrom, and shall operate such branches or extensions under the provisions of chapter 252 of the Laws of 1884, or of this article, such corporation shall pay such percentages only upon such portion of its gross receipts as shall bear the same proportion to its whole gross receipts as the length of such extension or franchises shall bear to the entire length of its line. * * *"

The provision quoted had its origin in section 8 of chapter 252 of the Laws of 1884, entitled "An act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof, in cities, towns and villages." Thence it found its way into section 95 of the general railroad law (chapter 565 of the Laws of 1890), which was amended by chapter 676 of the Laws of 1892, so as to read as I quote it, and, as quoted, it was in force when the Metropolitan and New York City Companies were incorporated under the general railroad law of 1890, of which it is a part.

The contention of the city is that it applies to any street surface corporation organized under the general railroad law since its enactment in 1890 with this provision in it, regardless of whether the franchise routes upon the gross receipts of which the claim is based had been granted by the state and locality and had been constructed and operated prior to 1884 or not. The contention cannot be sustained, and is, indeed, as it seems to me, barely arguable. The act of 1884 was intended to be wholly prospective in its operation; section 8 in terms applying to "every corporation *incorporated under*, or constructing or operating a railroad constructed or extended under*, the provisions of this act," and not to any *other* corporation. In the section of the railroad law quoted, the Legislature omitted the words italicized, plainly indicating its intention to impose the burden, not on street surface corpora-

tions created under the railroad law. regardless of whether the street railway franchises had been obtained and utilized by actual operation prior to the enactment of 1884, but on corporations, whether created under the railroad law or not, which enjoyed street surface franchises created subsequent to that time, and on those only. That this is so is evidenced by the care which is taken in the concluding portion of the paragraph of the railroad law relied on to subject such gross receipts only of corporations existing and operating before the act of 1884 as are derived from extensions under that act of then existing roads, leaving receipts from the routes to which such extensions were made, as they had been theretofore, free from the burden. I think, therefore, that the section relied on refers to a building subsequent to the act of 1884 by any street surface corporation, whether organized under the general railroad law or not, and to an operation commenced thereafter, and not to a continuance of operation already long begun by successive constituent companies. or by lessees created under the railroad law of street surface franchises outstanding prior to 1884. This conclusion is, I think, confirmed by the reasoning in the case of Ingersoll v. Nassau Electric Railroad Company. 157 N. Y. 453, 52 N. E. 545. 43 L. R. A. 236, where a construction of the railroad law similar to that here urged was condemned; the court holding that a lessee corporation created under the general railroad law was not required by law to obtain anew the consent of property owners or of the Appellate Division to the continued operation of the line leased, where such consent had been duly obtained by the lessor prior to its passage.

The amounts claimed are the percentages fixed by the statute, based upon the gross receipts of the Metropolitan and New York City Companies from all the street surface lines operated by them in Manhattan and the Bronx. as shown by their reports to the Railroad Commissioners. It may be judicially noticed that the five hundred odd miles of trackage operated consists mostly of franchise routes built and operated prior to 1884; the mileage of franchise routes created since being only a small, though not unimportant, proportion of this total. The record is, however. barren of any attempt to apportion receipts: the claims of the city proceeding solely on the theory indicated. They must therefore be dismissed as to both companies.

### Third—The Claims for Repaving.

These claims as originally filed have been largely reduced by a process of elimination, but the determination of the amount now claimed by the city has been made to depend upon the disposition of 11 cases submitted as tests, which, when passed upon, will settle the amounts for which the Metropolitan and New York City Railway Companies are liable. One question of a general nature is, however, suggested by the discussion in the briefs as to the liability of the New York City Railway Company, and that question may be disposed of before taking up the test cases.

[6] The liability of the New York City Railway Company is predicated on section 98 of the general railroad law (chapter 676, Laws of 1892), under which that company was organized, and which is as follows: "Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street. avenue, or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks and two feet in width outside of its tracks under the supervision of the proper local authorities, and whenever required by them to do so. and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs after the expiration of thirty days' notice to do so, the local authorities may make the same at the expense of such corporation, and such authorities may make such reasonable regulations and ordinances as to the rate of speed, mode of use of tracks, and removal of ice and snow. as the interests or convenience of the public may require. A corporation whose agents or servants wilfully or negligently violate such an ordinance or regulation, shall be liable to such city or village for a penalty not exceeding five hundred dollars to be specified in such ordinance or regulation."

The section quoted is taken from section 9 of chapter 252 of the Laws of 1884, which section in terms referred to corporations "incorporated under or

constructing, extending or operating a railroad constructed or extended under the provision" of that act, and it is insisted that, as the section of the railroad law omits the word "operating," it must be construed as applying only to a company "using" tracks it *owns*, and not to companies operating tracks owned by some other corporation, as in the case of the New York City Railway Company, which at none of the times in question owned any tracks, but simply operated over the tracks owned by other corporations. However persuasive the reasons urged in support of this construction may be, I think that it must be regarded as having been determined that section 98 of the railroad law does apply to the New York City Railroad Company. City of New York v. New York City R. Co., 132 App. Div. 156, 116 N. Y. Supp. 939. In this case the Metropolitan Crosstown Railway Company owned tracks on West Broadway, from Spring street to Fourth street, which, after due notice to the defendant, the city repaired. The Crosstown Company was organized under the act of 1884, and was subjected to special obligations respecting street paving, which were embodied, not only in that act, but in the agreements that it entered into under the act with the local authorities, and such obligations were ultimately devolved as a result of consolidation upon the company created by its union with others to form the Metropolitan Street Railway Company. It was this latter company, however, which leased, among other routes, the railroad route in the street in question to the defendant company, which was organized, not under the act of 1884, but under the general railroad law, of which the above-quoted section 98 is a part. The court distinctly held that section 98 of the railroad law imposed a liability on the defendant company, although it was the lessee only of the tracks in and about which the repavement there involved was made. It must therefore be held that, where the city has paved or repaved in and about the tracks of the New York City Railway Company since the lease to it by the Metropolitan Company, after notice in compliance with the statute, a liability has resulted under the section quoted, and this liability, it will be noted, results, not from the provisions of the lease, but from that section and from the fact of operation.

### Test Case No. 1.

[7] In this case it was stipulated that certain specification stone had been laid within the railway area by the New York City Railway Company in Reade street, between Center and West streets, prior to 1905. In that year the pavement was taken up by the city, and a new pavement of wood block was put down. The city was allowed by its contractors 20 cents a square yard for the old stone removed, amounting in all to about $46; the total number of stones removed being about 6,000. The receivers claim the value to be $25 per 1,000, basing it on the testimony of an expert produced by them; and the city submits similar expert testimony, placing the value at not more than $8 per 1,000, which was substantially the amount allowed. No question of notice enters into this case; the railroad company having received the statutory notice before the work of repaving was begun by the city, and with that notice it neglected to comply.

The contention that the company is entitled to the higher value can, it seems to me, be based solely on a claim that the railroad company owned the stone because it originally laid it. It did not, however, own the stone. When originally laid, it became a part of the street surface of a public highway, and can in no sense be said to have continued to belong to the railroad company. The city would have had the right to retain its title to it, and to have used it for the same or other work, instead of inviting bidders for the work to make allowances for it, and instead of turning it over to the successful bidder. It is doubtless true that the city could not do the work in a reckless or extravagant manner, nor charge for unnecessary expenses; but where the work is done in the regular way, after public letting to the lowest bidder, the presumption is that the price is reasonable. Mayor v. Second Ave. R. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. Rep. 839. Nor do I think that that presumption has been overcome by the testimony here. That of the city's expert is avowedly based on a special use for the stone after clipping for laying in slotted tracks in construction work. It cannot be regarded as pointing

a general market value. The price allowed as the result of general competitive bidding, supported as it is by the testimony of the city's expert, is much more likely to be such value. This claim should be allowed.

### Test Case No. 2.

[8] This case turns upon the sufficiency of the notice. It is addressed to the "Central Park," North & East River Railroad Company, New York City Railroad Company, lessee," and was duly served on the vice president of the City Railway Company. It states "that that portion of Jackson street, from Grand to South street, between the tracks, the rails of the tracks, and two feet in width outside of the tracks of the street surface railway used by you in said Jackson street is out of repair and needs repavement." The only tracks owned in Jackson street by the Central Park, North & East River Railroad Company are those included between Monroe and Front streets; the tracks from Madison to Monroe streets being owned originally by the Chambers Street & Grand Street Ferry Railway Company, which was one of the constituent companies of the Metropolitan Street Railway Company. The New York City Railway Company operated over the tracks of both of these companies as lessee. The theory of counsel for the receivers is that the notice operates only as to that portion of the tracks from Grand to South street which were actually owned by the Central Park, North & East River Railroad Company, and not as to the tracks owned by the Metropolitan Company, so that the claim for so much of the repaving as was done about the latter tracks on Jackson street should be disallowed.

Recent decisions construing these notices are very clear to the effect that, where the notice is of such a nature as to reasonably apprise the parties notified as to the character and extent of the work, informalities are to be disregarded. Here the City Company was plainly notified that the pavement was out of repair and was to be repaired on Jackson street, from Grand to South streets, with asphalt, and it did operate cars on the tracks, the paving area of which it disputes, as the basis of the claim. Although it is true that those tracks were not owned by the Central Park, North & East River Railroad Company, it was clearly apprised by the terms of the notice that the whole street in question was to be repaved, and it could not have been mistaken as to the extent and character of the work which the city required it to do, and which as an operating company it was bound to do. I think that under section 98 of the railroad law this notice must be regarded as sufficient, and that the claim must be allowed.

### Test Case No. 3.

In this case the notice was addressed to the Twenty-Third Street Railway Company, New York City Railway Company, lessee, and duly served on the vice president of the latter company. It contained provisions similar to those quoted with reference to test case No. 2, as to repavement on First avenue, from Thirty-Second to Thirty-Fifth streets, with asphalt. The Twenty-Third street road owned or operated no tracks on this street at that time, although the New York City Railway Company, as lessee, did. This notice comes within the same principle as that in the prior case, and the claim in dispute should be allowed.

### Test Case No. 4.

The claim here is for paving on Eleventh avenue, from Twenty-Second to Twenty-Seventh street. The track on it was owned by the Blecker Street & Fulton Street Ferry Railroad Company or the Twenty-Eighth and Twenty-Ninth Street Crosstown Railroad Company, or by the Metropolitan Street Railway Company. The notice was addressed to the Fourteenth Street branch of the Twenty-Third Street Railway Company, New York City Railway Company, lessee, and service on the vice president of the lessee company was duly made, requiring the repaving on the tracks used by it on said avenue. The only track owned by the Twenty-Third Street Company on the street specified was at the intersection of Eleventh avenue and Twenty-Third street,

and it is insisted that the claim should be confined to the repaving done at that point. The claim is similar to those already considered, and it should be allowed.

### Test Case No. 5.

This claim against the New York City Company is for repaving done on Lenox avenue, between 117th and 124th streets. The only notice to repave is contained in a letter, dated New York, October 7, 1903, to the Interurban Street Railway Company, 621 Broadway, stating "that as it failed to comply with the notice of June 4th, from this department, to repair within 30 days the asphalt pavement between the outer rails on Lenox avenue, from 116th to 135th streets, an order would be issued to an asphalt company to make the necessary repairs." It further required the company to reset the rails and to begin that work within three days from the receipt of the notice. This notice is the only notice upon which the city relies.

This notice is insufficient. A similar notice was held to be insufficient in the case of Mayor v. Bleeker Street & Fulton Street Ferry R. Co., 130 App. Div. 830, 115 N. Y. Supp. 592. The court held that it "gave no distinct notice to the defendant to repair the pavement or lay a new pavement within 30 days. It made no statement as to what portion of the pavement the defendant was required to pay for, and the letter itself seems to refer to the change in the rails or motor power or repairs that would necessitate a disturbance of the new pavement laid." The notice in the case at bar is open to the same condemnation, and the claim should be dismissed.

### Test Case No. 6.

[9] This claim includes five items disclosed by the record, which states that the tracks in and about which the paving was done had never been operated by the New York City Railway Company. The contention is that actual operation is the sole "use" contemplated by the statute. Doubtless abandonment of the franchise and removal of the tracks would relieve from liability; but maintenance of the tracks under a claim of right is, I think, as much a "use," within the meaning intended, as the actual operation of cars itself, and where, as here, such claim and maintenance are conceded, the liability results, even though no cars be run. This claim should also be allowed.

### Test Case No. 7.

This claim embraces seven items which include as many distinct streets in various parts of the city, in which it is stipulated that but one trip a day in each direction was made by a car over the tracks in said streets laid. This claim comes within the ruling disposing of the prior claim, and it should likewise be allowed.

### Test Case No. 8.

The claim here is for paving done on Lenox avenue, from 110th street to 119th street, and is against the New York City Railway Company. A notice was received in evidence, directed to the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company only, and it was the operating company; but no notice whatever to the New York City Railway Company was offered. This claim should therefore be dismissed.

### Test Case No. 9.

This claim is for repaving done on Amsterdam avenue, between Seventy-Second and Seventy-Third streets, in that avenue. At this point there are four tracks. The two outer tracks are owned by the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company, and the two inner tracks are owned by the Ninth Avenue Railroad Company. The Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company is operated independently from the Ninth Avenue Railroad Company and the New York City Railway Company, and the New York City Railway Company never operated any cars over the Forty-Second Street Company's tracks. The New York City Railway Company, as lessee, did operate cars over the tracks of

the Ninth Avenue Company. The notice reads as follows: "Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company, New York City Railway Company, Lessee: You will please take notice that the portion of Amsterdam avenue from Seventy-Second to Seventy-Third streets, between the tracks, the rails of the tracks. and two feet in width outside of the tracks of the street surface railway used by you in said Amsterdam avenue is out of repair and in need of pavement." The notice contains the usual statement as to the city's intention to repave, and the nature of the pavement, and continues: "The portion of said Amsterdam avenue traversed or intersected by and between the aforesaid tracks, the rails of the tracks, and two feet in width outside of the said tracks has a superficial area of approximately 650 square yards." The notice was served on the vice president of the New York City Railway Company. This is doubtless a border line case, but I think that a direction of the notice to the company actually owning tracks within the space and independently operating cars thereon, coupled with the fact that there were really two independent railway areas in the designated street, to only one of which, on any theory of construction of the notice in its application to the facts as they were. it can be held to apply, suggested a reason-able doubt as to the area intended. which justified the New York City Railway Company. even though it was erroneously named therein as lessee, in disregarding it. City of N. Y. v. Met. St. R. Co., 130 App. Div. 845, 115 N. Y. Supp. 878. This claim should be dismissed.

## Test Case No. 10.

This claim is for repaving done in Duane street, from Broadway to West street. The New York City Railway was operating as lessee over the tracks in that street. The notice was addressed to the Dry Dock, Broadway & Battery Railroad Company, New York City Railway Company, lessee; but the Dry Dock road owned no tracks in Duane street. It did operate tracks in Washington and Greenwich streets, which intersected the tracks in Duane street. and these points of intersection were not repaved. The railroad area in Duane street, between West and Washington streets, is 1,740 yards, which is the basis of the claim; but the notice specified the superficial area as approximately 24 square yards. and it is argued from this that such notice was insufficient to charge the railroad company, since it had a right to rely upon the statement as to superficial area, and to refrain from taking action, and, having such right, that it would be unfair to hold it for the whole repaving, or for anything in excess of the area specified, even assuming the validity of a notice directed as this was.

This notice is similar to those in other foregoing test cases which have been held valid, so that the only matter to consider is the effect of the misstatement as to the area to be covered. The notice in question clearly states that that portion of Duane street, from Broadway to West, comprising the railroad area used by the City Railway Company, was out of repair, and it was the intention of the city to repave the roadway of Duane street with wood block pavement between the points indicated. The insertion, therefore, of the figures "24" in the blank space left for that purpose was an error which could not have misled the company. The precise question here involved has been decided adversely to the contention in City of New York v. New York City R. Co., 60 Misc. Rep. 491, 113 N. Y. Supp. 869, affirmed 132 App. Div. 156, 116 N. Y. Supp. 939. This claim must therefore be allowed.

## Test Case No. 11.

In this case the notice was addressed to the Tenth Avenue Railroad Company, Interurban Street Railway Company, lessee: Interurban being the name of the New York City Railway Company at the time this notice was served. It related to the work done on Amsterdam avenue, from Seventy-Seventh to Seventy-Eighth streets, on which avenue there were four tracks, the two outer of which were owned by the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railroad Company, as in test case No. 9. There was no such company in existence as the Tenth Avenue Railroad Company, and the repaving was done in and about the tracks of the New York City Railway Company (Interurban).

191 F.—15

I think this claim, too, should be allowed, and I distinguish it from the test case referred to upon the ground that the notice on its face suggested no confusion by a reference to the true owner of the other tracks, so as to leave a doubt as to which tracks really were intended. Rejecting the words "Tenth Avenue Railroad Company," as has been done in other cases, the only tracks to which the notice would refer were those used by the Interurban (New York City Railway Company) as lessee, and I think that this claim must also be allowed.

It is conceded by counsel for the city that these paving claims are not preferred. When the result of applying the rulings in the foregoing test cases has been determined, a statement thereof should be filed, and will be incorporated in the report to be made to the court.

Byrne & Cutcheon, for complainant.
Dexter, Osborne & Fleming, for receiver of New York City Ry.
Archibald R. Watson, for City of New York.

LACOMBE, Circuit Judge. I fully concur in the careful opinion which the special master has filed with his report. The exceptions are overruled, and the report confirmed.